IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**ALVIN SHARPE,**
    Plaintiff,

v.                                        No: 5:07cv74/RS/MD

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    Defendant.
_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Sharpe's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should affirmed.

## PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and SSI benefits claiming an onset of disability as of April 18, 2002. The applications were denied initially and on reconsideration and plaintiff requested a hearing before an Administrative Law Judge (ALJ). A hearing was held before an ALJ on June 8, 2005 at which plaintiff was represented by counsel and testified. A vocational expert also testified. The ALJ rendered an unfavorable decision on November 15, 2005 (tr. 14-23) and the Appeals Council declined review (tr. 7-9), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe conditions of disc protrusion at C5-6, history of hypertension, history of low back pain, history of heartburn, history of shoulder impingement syndrome, and depression but that he did not have a condition that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; that his allegations regarding his limitations were not totally credible; that he had the residual functional capacity to perform a substantial range of light work, including lifting and carrying 20 pounds occasionally and ten pounds frequently, sitting and standing for four hours each in a normal eight hour workday with a sit/stand option at least every 30 minutes, with some postural limitations; that he could not perform any of his past relevant work, that he was an individual closely approaching advanced age with a limited education and no transferrable skills; that based on his residual functional capacity there were a significant number of jobs in the national economy that he could perform, and that he was not under a disability as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

As noted above, the ALJ found that one of plaintiff's severe conditions was depression. However, the issue of plaintiff's depression has not been advanced as a reason for reversal in this case, therefore although it will be noted in the following medical history, it will not be examined in detail.

The plaintiff apparently suffered an employment-related injury in the spring of 2002. He was treated by a chiropractor, Dr. J.S. Owens, D.C., from April 2002 through February 2004. It does not appear that he sought other treatment until September 2002 when he was seen by Ahmad Ismail, M.D., who noted back pain,

prescribed medication, and noted that plaintiff was getting better but was still hurting at the time of his second visit on September 12, 2002 (tr. 204-205).

In May 2003, slightly more than one year after his injury, plaintiff came under the care of Jason Hatcher, D.O., a family practitioner. Dr. Hatcher treated plaintiff on a monthly basis from May 2003 through April 2004, with a consistent diagnosis of "lumbago." Plaintiff's medical exams consistently showed that plaintiff was neurologically intact, that his motor functions were normal and that he had tenderness in his low back (tr. 270-299). During the course of that treatment, on June 13, 2003, Dr. Hatcher wrote a letter addressed To Whom It May Concern indicating that plaintiff continued to have marked pain in his lower and mid back with limited range of motion, that he needed an MRI and physical therapy and was not medically able to perform his job (tr. 352). Plaintiff was being covered by workers compensation at the time, and the workers compensation carrier refused to authorize an MRI.

Dr. Hatcher referred plaintiff to an orthopedic surgeon, Dr. Williams, but that appointment apparently was not kept. Plaintiff was therefore referred to James C. Owen, M.D., also an orthopedic surgeon, who first saw him on November 3, 2003. Plaintiff described a hyperflexion injury of his lumbar spine on the job in April 2002 and reported that he had been treated by Dr. Owens, the chiropractor, and Dr. Hatcher, the family practitioner. He had also had some physical therapy. He was taking multiple medications but continued to have back pain. On physical examination he appeared in no acute distress. He went from sitting to standing with some difficulty and stood with a flattened lumbar curve. There was tenderness through his low back but not in any specific area. He had limited range of motion on forward flexion, lateral bending and extension. He had tightness in his hamstrings at 45º. His reflexes were equal and normal but there was slightly decreased sensation over the S1 dermatome in both legs. An MRI revealed some mild diffuse degenerative changes in the thoracic area, and diffuse degenerative

changes in the lumbar area at L3-4, L4-5, and L5-S1, with the latter being the most prominent. There was also bulging of the L5-S1 disc causing foraminal stenosis bilaterally. There was also mild bulging at L4-5. Dr. Owen recommended a lumbar epidural steroid injection, started plaintiff on a work hardening program and rehabilitation, and told him to cut down on his pain medication (tr. 306-307).

Plaintiff returned to Dr. Owen on December 2, 2003, doing much better with his therapy and his work hardening. The epidural reportedly helped his leg pain. A lumbosacral corset was ordered and Dr. Owen felt that plaintiff would be able to return to work in a month (tr. 306). Plaintiff returned to Dr. Owen on February 26, 2004. At that time the doctor assigned a disability rating under the Florida Uniform Guidelines for Permanent Impairment at seven percent of the body relative to the disc and soft tissue lesions in the low back (tr. 322). On March 30, 2004, plaintiff reported to Dr. Owen that he continued to have pain in his back, now radiating into his hips and legs and had not really improved. He also complained of shoulder pain and clinically demonstrated some impingement in his right shoulder. There was no clinical change on examination of his lower extremities and Dr. Owen's impression was chronic rotator cuff impingement on the right and chronic lumbar disc (tr. 321-322). Plaintiff returned on April 19, 2004 unimproved. The shoulder was injected and plaintiff was told to return as needed. He returned on May 11, 2004 essentially unchanged. He stated that he had pain daily. Dr. Owen noted that plaintiff had been tried on various treatments for chronic lumbar disc disease including anti-inflammatory agents, muscle relaxants, and epidurals, but that these did not seem to help. Dr. Owen suggested a repeat epidural but plaintiff declined. Dr. Owen also suggested the possibility of shoulder surgery but plaintiff again declined (tr. 320). There is no indication that Dr. Owen has seen plaintiff since May 2004. Dr. Owen filled out a form on April 5, 2004 in which he opined that plaintiff's pain and drug side effects were severe enough to keep him from working and that he would be

absent from work due to his back and shoulder problems more than three times a month (tr. 303-305).

Plaintiff returned to Dr. Hatcher in September 2004 and continued with essentially monthly treatments through March 2005. His condition seemed to be getting better initially (tr. 328-330) but plaintiff indicated that his pain was becoming worse in late 2004 (tr. 333) and was no better by the time he last saw Dr. Hatcher on March 21, 2005 (tr. 355).

Dr. Hatcher also filled out a form on the possibility of plaintiff doing sedentary work and indicated that in his opinion plaintiff could not sustain activity at a pace and with the attention to task as would be required in the competitive work place, could not sit for up to six hours in a normal position, and could not be expected to attend any employment on an eight hour per day/five day per week basis (tr. 324). Dr. Hatcher also opined that plaintiff's pain and the side effects of his medication would effectively keep him from working (tr. 325-326).

The only other relevant medical evidence was an evaluation and report done for the state agency by Sam R. Banner, M.D., on September 30, 2002. At that time plaintiff was complaining of chronic neck pain as well as low back problems. On examination of plaintiff's back there was no spasm or bony abnormality, and range of motion was normal. Plaintiff demonstrated stiffness getting on and off the examining table but he was able to walk normally. He was able to squat and heel/toe walk normally. He was neurologically intact, his reflexes were normal, his grip strength was normal, there was back pain on both sides, worse on the left, in straight leg raising, there was no atrophy of any muscle group, and muscle tone was normal. Dr. Banner's diagnosis was cervical pain with history of bulging discs, chronic low back pain with history of herniated disc, and hypertension. Dr. Banner did not state any opinions as to plaintiff's ability to perform the functions of work (tr. 206-209).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing properly to credit the opinions of his treating physicians and his subjective complaints of pain, and in determining his residual functional capacity, and that plaintiff was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.  <u>Treating physicians and subjective complaints of pain.</u>

Plaintiff first contends that the ALJ improperly discounted the opinions of Dr. Hatcher and Dr. Owen. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Stewart, supra; Lewis, supra.; Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). Generally, a treating physician's medical opinion is entitled to greater weight than the opinion of a consulting physician. *Wilson v. Heckler*, 734 F.2d 513, 516 (11th Cir. 1984). In *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986), the Eleventh Circuit ruled:

> The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. . . . Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.

786 F.2d at 1053. The opinion of a nonexamining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician. *Broughton v. Heckler*, 776 F.2d

960, 962 (11th Cir. 1985). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). *Compare, Wilson v. Heckler, supra*.

In many cases, as in this one, a treating physician's opinion is based in large part on the patient's subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the

---

[1] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons

articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

a.   Dr. Owen.

The thrust of plaintiff's contention concerning Dr. Owen's opinion hinges on the seven percent permanent impairment rating he gave the plaintiff based on neck and back problems. It is clear in the Eleventh Circuit that a disability rating by the Department of Veterans Affairs (VA) or Florida's Division of Workers Compensation is not binding on the Commissioner, but is entitled to great weight, and that it is error for the Commissioner to ignore it. *Falcon v. Heckler*, 732 F.2d 827 (11th Cir. 1984) (holding that because Florida workers compensation disability law and Social Security disability law operate similarly, the ALJ must give great weight to a workers compensation decision); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983) (holding that "findings of disability by another agency, although not binding on the [Commissioner], are entitled to great weight."); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. Unit A, March 25, 1981)[3] (holding that "a VA rating is certainly not binding on the [Commissioner], but it is evidence that should be considered and is entitled to great weight . . . and [in this case] should have been more closely scrutinized."); *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972); *Hogard v. Sullivan*, 733 F.Supp. 1465 (M.D. Fla. 1990).

Even though plaintiff argues that he was "in fact accepted as permanently and totally disabled under Chapter 440, Florida Statutes" (doc. 15, p. 20), there is nothing in the administrative record to support this statement. If there was an actual ruling by a Judge of Industrial Claims, the court has not seen it. If there was a settlement by which the employer/carrier "accepted" plaintiff as totally disabled, it is not in the record either. And even if it were, it is not a finding, only a settlement. Settlements of contested issues are reached for many reasons, and in any event are not binding on the Commissioner. Furthermore, the disability rating given by Dr. Owen, seven

---

[3] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

percent, was noted by the ALJ, who described it as a "mere" seven percent (tr. 17-18).  Such a characterization was not unreasonable.  Finally, the record reflects that plaintiff was offered another epidural injection and shoulder surgery, but declined both.  Failure to seek treatment can be used as a basis for discounting subjective complaints of pain.  *Watson v. Heckler*, 738 F.2d 1169 (11th Cir. 1984).  Plaintiff's treatment was conservative only.  Allegations of disabling pain can be discounted where there is only conservative treatment.  *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996).  The limitations noted by Dr. Owen's records, considered alongside his disability rating, were not nearly so severe as the restrictions he later stated in the form he filled out in April, 2004 (tr. 304-305).  The ALJ did not err in discounting Dr. Owen's opinion.

    b.    <u>Dr. Hatcher.</u>

The ALJ also discounted Dr. Hatcher's opinion.  His records showed bulging discs, but nothing greater, and he frequently noted that plaintiff's pain medication was effective, and that plaintiff was doing well (tr. 277, 328, 331-332).  The ALJ did not err in discounting Dr. Hatcher's opinion.

    c.    <u>Plaintiff's subjective complaints of pain.</u>

The ALJ discounted plaintiff's subjective complaints of pain based on inconsistent medical reports, conservative treatment, lack of objective medical evidence, and the seven percent disability rating assigned by Dr. Owen.  Plaintiff says that the ALJ's evaluation was improper, but does not explain how, nor does he challenge the bases the ALJ assigned for his opinion.  As noted above, evaluation of subjective complaints of pain is often largely a matter of determining credibility, and here the ALJ's determination was based on substantial record evidence.

    2.    <u>Residual functional capacity.</u>

Plaintiff also contends that the ALJ erred in determining his residual functional capacity.  However, his argument is grounded on his contention that the

opinions of the treating physicians should have been given great weight, a contention that failed. He further contends that the vocational expert should have taken the opinions of the treating physicians into consideration. However, the ALJ asked the vocational expert to assume a hypothetical worker with the residual functional capacity he ultimately determined that plaintiff had. Based on that hypothetical, the vocational expert opined that there was work in the national economy that the hypothetical worker (and therefore plaintiff) could perform. There was therefore no error in the determination of the residual functional capacity or the vocational expert's opinion. Plaintiff is not entitled to reversal or remand on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 31st day of March, 2008.

/s/ *Miles Davis*
        **MILES DAVIS**
        **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**

Case No: 5:07cv74/RS/MD